# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CRIMINAL NO. 6:09-CR-91 |
| | § | |
| ALEJANDRO CABRERA (03) | § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Alejandro Cabrera's Motion to Withdraw Guilty Plea (Doc. No. 148) ("Motion") and the Government's Response (Doc. No. 156) ("Response"). Having considered the pleadings and the applicable law, together with Defendant's Plea Agreement and Factual Resume, along with testimony and the arguments of counsel at a hearing on the same on May 21, 2010 ("the hearing"), the Court hereby **RECOMMENDS** that Defendant's Motion be **DENIED**.

## BACKGROUND

On July 24, 2009, Defendant was arrested and charged with Conspiracy to Distribute Methamphetamine and Possession of a Firearm During and Relation to a Drug Trafficking Crime, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 924(c). On August 5, 2009, the Grand Jury returned an indictment against Defendant. In relevant part, the indictment alleged (1) Conspiracy to Distribute Methamphetamine; (2) Possession with Intent to Distribute Methamphetamine and aiding and abetting; and (3) Possession of a Firearm During and in Furtherance of a Drug Trafficking Crime. On January 4, 2010, the parties entered into an agreement whereby Defendant would enter a plea of guilty to Count 1 of the indictment, charging conspiracy to distribute methamphetamine. In the agreement, the parties stipulated to the following: that the base offense level is 34 pursuant to U.S.S.G. § 2D1.1; that a two-level increase is applicable because a dangerous weapon was

possessed; and that a recommendation from the U.S. Probation Office will result in a three-level reduction for an acceptance of responsibility. The Pre-Sentence Investigation Report corresponds to these stipulations, arriving at an offense level of 33 with a criminal history category of IV– resulting in a guideline range of 188 to 235 months and a recommended sentence of 210 months.

Agreeing to these terms, Defendant appeared before the undersigned and pled guilty as to Count 1 of the indictment under 21 U.S.C. § 846 on January 7, 2010. Pursuant to this Plea Agreement, Defendant agreed that he understood the nature and the elements of the crime for which he admitted his guilt. Defendant also agreed that the parties' stipulations were not binding on the Court[1] and he agreed not to appeal his conviction or otherwise contest his sentence in any post-conviction proceeding.

In the Motion and at the hearing, Defendant advanced that his plea should be withdrawn because he is innocent of all charges in the indictment and that he pled guilty as a result of not understanding what the Plea Agreement stated. At the hearing, Defendant alleged that the Government obliged him to sign the papers and admit his guilt. Defendant further stated that he was satisfied with the representation of his appointed counsel, Carlo D'Angelo.

The Government argues that Defendant never maintained his innocence until the filing of the Motion to Withdraw, 4.5 months after entering his guilty plea and confirming the accuracy of the Government's Factual Resume at his pre-sentencing meeting. RESPONSE at 4. The Government also recounts the Magistrate Judge's thorough plea inquiry to demonstrate that the plea was knowing and voluntary. Lastly, the Government advances arguments contending that permitting withdrawal of

---

[1] The Plea Agreement sets forth the Court's broad discretion in sentencing. In executing this agreement, Defendant affirmed that he understood that he would not be allowed to withdraw the plea entered if his sentence was higher than expected, so long as it was within the statutory maximum.

the guilty plea would prejudice the Government, inconvenience the Court, and waste judicial resources. *Id*. at 5.

## **LEGAL STANDARD**

A defendant does not have an absolute right to withdraw a guilty plea. *United States v. Washington*, 480 F.3d 309, 316 (5th Cir. 2007). Rather, a defendant may withdraw a plea of guilty if the defendant can show a "fair and just" reason for his withdrawal. FED. R. CR. P. 11(d)(2)(B); *United States v. Carr*, 740 F.2d 339, 343 (5th Cir. 1984) (citing *United States v. Rasmussen*, 642 F.2d 165 (5th Cir. 1981)). The factors a court should consider when determining whether a fair and just reason have been shown are: (1) whether the defendant has asserted his innocence; (2) whether the Government would suffer prejudice if the withdrawal motion were granted; (3) whether the defendant has delayed in filing his withdrawal motion; (4) whether the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources; and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion. *See Carr*, 740 F.2d at 343–44. The district court is not required to make findings as to each of the *Carr* factors. *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991). Neither is any single factor dispositive; instead, the determination is based on a totality of the circumstances. *Id*; *see also Carr*, 740 F.2d at 344. The district court's decision is discretionary and will not be disturbed absent an abuse of discretion. *United States v. Benavides*, 793 F.2d 612, 616 (5th Cir. 1986). The burden of establishing a "fair and just reason" for withdrawing a guilty plea rests at all times with the defendant. *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir.

2001).

## **ANALYSIS: APPLICATION OF THE *CARR* FACTORS**

**A.      Whether Withdrawal of the Plea was "Knowing" and "Voluntary"**

It is well established that "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Lampazianie*, 251 F.3d at 524. Nevertheless, in his Motion and at the hearing to withdraw his plea, Defendant claims that he made false statements at the plea hearing because he did not appreciate what he was saying. According to Defendant, even though he testified under oath at his plea hearing that he was entering the plea voluntarily with full information, he has been innocent all along. Defendant now claims he only pled guilty because (1) he did not understand what the prosecution was obliging him to say; and (2) he suspected the Government was seeking to contact his family and alter his child support responsibilities. These circumstances were never raised during the initial plea hearing, where the Court questioned Defendant as to all the circumstances leading him to enter into a plea agreement, including whether the factual basis for the plea was true and correct:

> THE COURT:      All right, let me turn now to the factual resume which has been presented to me and I've had a chance to review it. I've also considered answers to Ms. Cozby's questions. What I want to ask you first is this, is everything in this factual resume true and correct?
>
> MR. ALEJANDRO CABRERA:      Yes.

Specifically, in the Factual Resume executed by Defendant, he stipulated and agreed that the factual allegations set forth against him were true and correct. Defendant acknowledged therein that he conspired with Jose Gaona, Juan Caballero, Leonel Miralrrio, and Peter Keovongphet to distribute 400.5 grams of methamphetamine. Defendant stipulated that he and his co-defendants then entered

4

the Eastern District of Texas and that they intended for Peter Keovongphet to sell the methamphetamine to another person in Longview or Shreveport for $25,000. The Factual Resume also recites that there was a pistol in the truck Defendant was traveling in at the time of his arrest. In signing the Factual Resume, Defendant explicitly acknowledged that he was pleading guilty because he was guilty of the violation alleged in Count 1 of the indictment.

These admissions are currently denied. A review of the transcript of the plea colloquy, however, reveals that the Court also went over Defendant's desire to have his plea taken and that he understood what was happening. As recited herein, Defendant affirmatively acknowledged that he understood what was happening:

> THE COURT: Do you feel like you fully understand the terms of the agreement?
>
> MR. ALEJANDRO CABRERA: Perfectly.
>
> * * *
>
> THE COURT: All right, Mr. D'Angelo, have you informed the Defendant fully of the consequences of his guilty plea?
>
> MR. D'ANGELO: Yes, sir, your Honor.
>
> THE COURT: And you believe he understands what he is doing?
>
> MR. D'ANGELO: Yes, sir, your Honor.

This testimony is additionally bolstered by signatures from both Defendant[2] and his counsel in an addendum to the Plea Agreement stating that every part of the Plea Agreement had been reviewed, and that Defendant's plea was informed and voluntary.

The Court specifically questioned Defendant as to the circumstances underlying his

---

[2] The Plea Agreement was also countersigned by a translator.

agreement with the Government. In fact, at the plea hearing, the Court specifically asked Defendant if he had been coerced and Defendant declared under oath, in open court, that he had not been threatened or coerced:

> THE COURT: Has anyone made any other promises to you, that is, promises that are not in this Plea Agreement, in exchange for your plea?
>
> MR. ALEJANDRO CABRERA: No, sir.
>
> THE COURT: Has anyone attempted to force you to plead guilty?
>
> MR. ALEJANDRO CABRERA: No, sir.
>
> THE COURT: Are you pleading guilty because you are in fact guilty?
>
> MR. ALEJANDRO CABRERA: Yes, sir.

Defendant's recent contentions that his plea was not voluntary are in direct conflict with his sworn assertions to the Court and the probation officer during his pre-sentencing interview. Although Defendant explains that he did not "understand" the accompanying documentation, and therefore, his plea was involuntary, he never raised inadequate translation as a basis for his lack of understanding. To the contrary, the record reflects that all proceedings were translated to Defendant in Spanish, and the Court expressly inquired into a potential language barrier at the plea hearing. This issue was never represented to be problematic:

> THE COURT: Mr. D'Angelo, let me ask at this point because of Mr. Cabrera's limited understanding of English, how has the recitation gone with regard to that?
>
> MR. D'ANGELO: It's gone very well, your Honor. I've had the benefit of having Mr. Urbina with me for each and every visit which we discussed substantive issues in this case, including all of the discovery, and the Plea Agreement was translated verbatim and countersigned by Mr. Urbina.

Importantly, at the hearing to withdraw his plea, Defendant appeared to have no difficulty understanding the translations that were communicated to him and he also informed the Court that he was satisfied with the representation of counsel. At no time did he suggest that Mr. D'Angelo was unable to communicate with him or that he was improperly communicating the negotiations with the Government that resulted in his Plea Agreement. Based on those statements and the passages cited above, it appears unlikely that there was any misunderstanding of what transpired during the plea hearing or the communications with the Government preceding the plea. Given Defendant's repeated admission to federal drug charges and the subsequent appearances in court, it is also unlikely that he was unaware of what was happening.

Instead, what Defendant seems to communicate is that he has difficulty processing or otherwise accepting the terms of his guilty plea. Despite now maintaining his innocence, Defendant's contentions ring hollow in the absence of a compelling justification as to why he made contrary statements during his plea colloquy. Furthermore, as was represented by the Government at the hearing, there is no sworn testimony or other form of credible evidence to suggest that Defendant's child support obligations would be affected by how he pled to the charges brought against him. Defendant was unable to clearly articulate any specific facts underlying his belief that the Government would seek contact with his family, and in the absence of any credible proof to support these allegations, the Court is not in a position to factor these accusations into the instant analysis.

All in all, the rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered. *United States v. Moya*, 730 F. Supp. 35, 42 (N. D. Tex. 1990). Defendant argues that his plea agreement was not knowing and voluntary because he felt obliged to sign the agreement and plead guilty in open court. Based on the

record cited herein and the assertions made at the hearing, however, the Court finds that even with Defendant's declarations of innocence, the *Carr* factor evaluating whether the original plea was made knowingly and voluntarily weighs against Defendant.

**B.      Additional Considerations in a Request to Withdraw a Guilty Plea**

The other *Carr* factors considered under these circumstances include:[3]

- whether the Government would suffer some harm from the granting of the motion to withdraw the plea;

- whether the Government would suffer prejudice if the withdrawal motion were granted;

- whether withdrawal would substantially inconvenience the court; and

- whether the withdrawal would waste judicial resources.

*See Carr*, 740 F.2d at 343–44 (internal citations omitted). First, considering prejudice to the Government in the event that the motion to withdraw a guilty plea were granted, it appears that this factor is intertwined with other factors of general inconvenience such as whether the withdrawal would substantially inconvenience the Court and whether the withdrawal would waste judicial resources. Here, inconvenience would be present as a result of the Court having to work this case back into its trial schedule. Preparing for a new trial would additionally require the expenditure of court and prosecutorial resources, such as locating, visiting, and preparing witnesses such as the co-defendants Leonel Mirallrrio and Peter Keovongphet, and there would also be inconvenience and lost resources in terms of the time and effort invested by the probation officer in preparing the Pre-Sentence Investigation Report. After having already proceeded through the plea hearing, to resume

---

[3] The inquiry as to "whether close assistance of counsel was available" is not an issue in this particular case since Defendant had the assistance of counsel during all proceedings.

preparations for trial would also be a waste of resources for the Court and the Government that weighs in favor of the Government's position.

Finally, *Carr* also requires the Court to determine whether the Defendant delayed in filing his motion to withdraw his plea. *See Carr*, 740 F.2d at 344. The Fifth Circuit has held that the longer a defendant delays in filing a motion to withdraw a guilty plea, the more substantial reasons he must proffer in support of his motion; conversely, prompt withdrawal may indicate that plea was unknowingly entered in haste. *Id*. Furthermore, "[t]he movant's reasons must meet exceptionally high standards where the delay between the plea and the withdrawal motion has substantially prejudiced the Government's ability to prosecute the case." *Carr*, 740 F.2d at 344 (internal citations omitted). As pointed out by the Government, Defendant delayed 139 days following his plea of guilty before filing this Motion. At the hearing, Defendant gave no justification for not filing this Motion or otherwise asserting his innocence sooner. Therefore, in this context, a delay of 139 days will also weigh against Defendant's position that he should be allowed to withdraw his guilty plea.[4]

In sum, the Court finds, under a totality of the circumstances, that the *Carr* factors weigh against granting Defendant's Motion. The Defendant made a calculated, reasoned determination to plead guilty to the indictment against him, as attested by his signature on the Plea Agreement and Factual Resume. He made a plea of guilty in open court, after having been questioned by the Court as to his innocence, as well as whether his plea was made knowingly and voluntarily. These factors alone weigh heavily against him. When coupled with the waste of judicial resources and the

---

[4] As argued by the Government, the amount of time between the entering a plea of guilty and filing the instant Motion is excessive. Previous cases have repeatedly held that a significantly shorter time period weigh against granting a defendant's motion to withdraw a guilty plea. *See, e.g., Carr*, 740 F.2d at 345 (22 days); *Benavides*, 793 F.2d at 617–18 (84 days); *United States v. Rinard*, 956 F.2d 85, 88–89 (5th Cir. 1992) (69 days); *United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (6 weeks).

9

prejudice that escalated during the extended delay in filing this Motion, Defendant has failed to show a "fair and just reason" for the Court to exercise its discretion and allow Defendant to withdraw his plea. *See United States v. Still*, 102 F.3d 118, 123–24 (5th Cir. 1996); *United States v. Brewster*, 137 F.3d 853, 857 (5th Cir. 1998). A defendant has the burden of establishing the reason for the withdrawal, and in this case, Defendant has failed to put forth any credible reason for permitting the withdrawal of his plea.

## CONCLUSION

Accordingly, for the reasons stated above, the Court **RECOMMENDS** that Defendant's motion be **DENIED**.

A party's failure to file objections to the findings, conclusions, and recommendations contained in this Report within fourteen (14) days after service with a copy thereof shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 1st day of July, 2010.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE